# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

Attorney for Irmina Gradus-Pizlo, M.D.:
**DAVID J. LANGE**
Stewart & Irwin, P.C.
Indianapolis, Indiana

Attorney for Select Specialty
Hospital Indianapolis, Inc.:
**N. KENT SMITH**
Hall Render Killian Heath & Lyman, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**CYNTHIA S. ROSE**
Baxter James & Rose, LLP
Indianapolis, Indiana



FILED
Mar 15 2012, 9:35 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IRMINA GRADUS-PIZLO, M.D. and SELECT SPECIALTY HOSPITAL INDIANAPOLIS, INC., )<br><br>Appellants-Defendants, )<br><br>vs. )<br><br>DONALD ACTON, )<br><br>Appellee-Plaintiff. ) | No. 49A02-1106-CT-503 |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-1004-CT-19137

**March 15, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, Select Specialty Hospital Indianapolis, Inc. (Select Special Hospital) and Irmina Gradus-Pizlo, M.D. (Dr. Gradus-Pizlo) (collectively, Appellants), appeal the trial court's denial of their motion of summary judgment in favor of Appellee-Plaintiff, Donald Acton (Acton), concluding that there are genuine issues of material fact with respect to the commencement of the statute of limitations for Acton's Proposed medical malpractice Complaint.

We reverse.

## ISSUE

Appellants present three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred in its conclusion that genuine issues of material fact remain whether Acton properly filed his Proposed Complaint in accordance with the applicable statute of limitations under the Medical Malpractice Act.

## FACTS AND PROCEDURAL HISTORY

Myrtle Acton (Myrtle) first became a patient of Dr. Gradus-Pizlo in February 2006. On March 2, 2006, Myrtle was admitted to Methodist Hospital by Dr. Gradus-Pizlo for diagnostic testing related to a congenital heart defect. During the course of the evaluation, it became clear that Myrtle was a candidate for surgical correction of her heart defect. On March 12, 2006, as part of the preparations for surgery, Dr. Gradus-Pizlo placed Myrtle on Spironolactone, a medication used to help treat severe congestive heart failure. On March 14, 2006, Myrtle was admitted to Select Specialty Hospital for

2

additional care prior to cardiac surgery scheduled for April 13, 2006. Select Specialty Hospital leased space on the seventh and eighth floor of Methodist Hospital. While a patient at Select Specialty Hospital, Myrtle was seen by Dr. Samuel Hollingsworth and her medication was continued.

On March 29, 2006, at approximately 6:15 a.m., Myrtle suffered ventricular tachycardia. When Dr. Gradus-Pizlo was informed of this development, she recommended that Myrtle be transferred to the Methodist Hospital Intensive Care Unit (ICU) for further care. While in the elevator during transfer from Select Specialty Hospital to Methodist Hospital ICU, Myrtle went into full cardiac arrest. She was immediately transported back to Select Specialty Hospital where she was stabilized. At approximately 12:54 p.m., Myrtle was transferred to Methodist Hospital. Upon admission at the ICU, new treatment and medication orders were entered and at that time, the Spironolactone medication was discontinued. Myrtle subsequently died at Methodist Hospital on April 12, 2006.

On April 1, 2008, Acton, individually and as representative of his deceased wife, filed a Proposed Complaint with the Indiana Department of Insurance alleging medical malpractice by Dr. Gradus-Pizlo and Select Specialty Hospital. On February 28, 2010 and May 25, 2010, Select Specialty Hospital and Dr. Gradus-Pizlo respectively filed separate motions for summary judgment and designation of evidence claiming that Acton had failed to comply with the Medical Malpractice Act statute of limitations. On June 1, 2010, Acton responded by filing his memorandum in opposition and designation of evidence. On February 16, 2011, the trial court conducted a hearing on both motions.

3

On April 4, 2011, the trial court denied both motions for summary judgment finding "genuine issues of material fact remain with regards to the trigger date of the statute of limitations." (Appellants' App. p. 10).

Appellants now file this interlocutory appeal. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

Appellants file this interlocutory appeal from the trial court's denial of their motions for summary judgment in favor of Acton. They contend that Acton failed to file his cause of action within the Medical Malpractice Act's statute of limitations. We will analyze the trial court's denial of each motion in turn.

I. *Summary Judgment*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must

4

show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

When the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside of the statutory period, the burden shifts to the non-moving party to establish an issue of material fact material to a theory that avoids the affirmative defense. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000).

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Dr. Gradus-Pizlo*

Dr. Gradus-Pizlo contends that the trial court erred when it denied her motion for summary judgment because Acton's claim of medical malpractice was filed outside the applicable two-year statute of limitations. Specifically, she asserts that based on the occurrence-based statute of limitations and the absence of a continuing wrong, Acton filed his claim late.

### A. *Statute of Limitations*

The statute of limitations for medical malpractice claims is contained in Indiana Code section 34-18-7-1(b):

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect.

This occurrence-based statute of limitations has been upheld as constitutional on its face under the Indiana Constitution, Article I, Sections 12 and 23, but has also been held to be unconstitutional as applied in certain circumstances. *Garneau v. Bush*, 838 N.E.2d 1134, 1141 (Ind. Ct. App. 2005), *trans. denied*; *Martin v. Richey*, 711 N.E.2d 1273, 1284-85 (Ind. 1999). The statute requires that a medical malpractice claim be filed within two years of the negligent act and has been upheld as constitutional when applied to all plaintiffs able to discover the alleged malpractice and injury within two years from the occurrence. *Garneau*, 838 N.E.2d at 1141.

In *Booth v. Wiley*, 839 N.E.2d 1168, 1172 (Ind. 2005), our supreme court created a two-step analysis for the application of Indiana's two-year medical malpractice limitation period. The first stage of the analysis begins with determining whether a claimant discovered the alleged malpractice and resulting injury, or possessed information that would have led a reasonably diligent person to such discovery during the two-year period after the alleged act or omission. *Id*. If the answer is affirmative, then the purely occurrence-based limitation period is both applicable and constitutional, so long as the claim can reasonably be asserted before the period expires. *Id*.

However, if a claimant does not discover the alleged malpractice and the resulting injury, and does not possess information that would lead a reasonably diligent person to such discovery during the two-year period, then the purely occurrence-based limitation period is unconstitutional as applied. *Van Dusen v. Stotts*, 712 N.E.2d 491, 497-98 (Ind. 1999). In such cases, a second stage of analysis must then be applied to determine when the claimant possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury. *Id.* The date determined is the date the two-year limitations period begins to run for such a claimant. *Id.*

In determining the discovery date (in the language of *Booth*) or trigger date (the term used in the more recent decision of *Herron v. Anigbo*, 897 N.E.2d 444 (Ind. 2008)), we construe all facts in favor of Acton as the nonmovant. *See Garneau*, 838 N.E.2d at 1141. However, the discovery date or trigger date does not depend upon when a plaintiff knows with certainty that malpractice has occurred; a plaintiff need only know facts that through reasonable diligence would lead to the discovery of the alleged malpractice and resulting injury. *See id.*

In his Proposed Complaint, Acton contends

7. [Myrtle's] medications were changed and on March 14, 2006, Dr. Gradus-Pizlo added Spironolactone to her other medications and noted that her potassium should be checked in one week.
8. On or about March 29, 2006, [Myrtle] had an episode of ventricular tachycardia and it was decided that she would be transferred [from Select Hospital] to Methodist Hospital proper.
9. Upon leaving the elevator, she went into full cardiac arrest and the resuscitation efforts were continued in the elevator returning to the 8th floor.

7

10. Her potassium level was dangerously high at 7.2 and because of the difficulty in resuscitation efforts, it was estimated that she was without oxygen for 25 minutes.

11. The high potassium caused her cardiac arrest. The cardiac arrest resulted in brain damage and ultimately her death on April 12, 2006.

(Appellants' App. p. 82).

Acton now alleges that he could not have learned of any malpractice until Myrtle's death on April 12, 2006. We disagree. The malpractice, as alleged in Acton's Proposed Complaint, is Dr. Gradus-Pizlo's enhancement of Myrtle's medication regime with Spironolactone on March 12, 2006. This new additional medication is alleged to have led to a high potassium level, causing a cardiac arrest on March 29, 2006, which resulted in her death two weeks later. Based on these facts, we determine the discovery date or trigger date to be March 29, 2006, the date of Myrtle's ventricular tachycardia and subsequent cardiac arrest. On that date, Myrtle's condition brought to light the possibility that Dr. Gradus-Pizlo might have been negligent by prescribing Spironolactone. We reject Acton's contention that the trigger date should be defined as the date of the resulting injury, *i.e.*, Myrtle's death on April 12, 2006; as we stated before, the possession of information leading to a reasonable possibility that malpractice has occurred is sufficient for the statute of limitations to be triggered. *See Garneau*, 838 N.E.2d at 1141.

Thus, with an alleged act of malpractice occurring on March 12, 2006, the occurrence-based statute of limitations would have expired on Wednesday, March 12, 2008. With Acton's discovery or trigger date placed on March 29, 2006, Acton had sufficient information that would have led a reasonably diligent person to the discovery

8

of malpractice during the remaining 1 year, 11 months, and 2 weeks of the two-year statute of limitations period. By filing his Proposed Complaint on April 1, 2008, we conclude that Acton's cause is barred by the statute of limitations.

B. *Continuing Wrong*

In an effort to avoid the two-year statute of limitations, Acton claims that the doctrine of continuing wrong applies and prevents his claim from being time-barred. The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. *Garneau*, 838 N.E.2d at 1143. When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Garneau*, 838 N.E.2d at 1143. The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place. *Id*.

Acton specifically contends that the entire course of care provided to Myrtle by Dr. Gradus-Pizlo throughout Myrtle's hospitalization until the day of her death resulted in a continuing wrong that tolled the two-year statute of limitations. However, Acton's alleged medical malpractice consists of a single act, the prescription of Spironolactone, not an "entire course of conduct." *See id*. Even if we characterize the daily admission of the medication to Myrtle as a continuing course of conduct, Acton's claim would still not be properly filed. Myrtle was prescribed Spironolactone on March 12, 2006. The medication was discontinued on March 29, 2006, the day of her cardiac arrest and upon her re-admittance at the ICU, new treatment and medication orders were entered. Thus,

9

the continuing wrong ceased to exist on March 29, 2006 and the statute of limitations commenced to run. By filing his cause of action on April 1, 2008, Acton's cause was time-barred by the statute of limitations. Therefore, we reverse the trial court's denial of summary judgment and grant summary judgment to Dr. Gradus-Pizlo.

### III. *Select Specialty Hospitals*

Applying the occurrence-based statute of limitation with respect to Select Specialty Hospitals, we reach a similar result. Although Acton's Proposed Complaint does not single out a specific act of malpractice committed by Select Specialty Hospitals, his argument focuses on the continuation of the prescribed Spironolactone medication while Myrtle was in Select Specialty Hospital's care. Even if the continuation of a prescription prescribed by a doctor not in Select Specialty Hospital's employment can be found to constitute an act of malpractice on the part of Select Specialty Hospital, it should be noted that Select Specialty Hospital stopped giving Myrtle the medication on March 29, 2006, the day of her cardiac arrest. At that moment, the statute of limitations commenced. As we concluded above, Acton's cause filed on April 1, 2008 was untimely and barred by the application of the statute of limitations. We reverse the trial court's denial of summary judgment and grant summary judgment to Select Specialty Hospitals.

### CONCLUSION

Based on the foregoing, we that find that the trial court improperly denied summary judgment to Dr. Gradus-Pizlo and Selection Specialty Hospitals. We reverse the trial court's denial and grant summary judgment to Dr. Gradus-Pizlo and Select Specialty Hospitals.

Reversed.

FRIEDLANDER, J. and MATHIAS, J. concur