# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**MARK W. BAEVERSTAD**
**ANDREW L. PALMISON**
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

**KARL L. MULVANEY**
**JESSICA WHELAN**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DAVID VAN GILDER**
Van Gilder & Trzynka, P.C.
Fort Wayne, Indiana



FILED
Nov 07 2014, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANONYMOUS PHYSICIAN and ANONYMOUS MEDICAL GROUP, | ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 02A03-1401-CT-1 |
| RICHARD LOUCKS ROGERS, | ) ) | |
| Appellee-Plaintiff. | ) ) | |

## APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Stanley A. Levine, Judge
Cause No. 02D01-1212-CT-624

**November 7, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

Richard Rogers, pro se, filed with the Indiana Department of Insurance a proposed complaint for medical malpractice on March 4, 2011 against Anonymous Physician and Anonymous Medical Group (collectively, "Physican"). Physician filed in the trial court a Motion for Preliminary Determination and for Summary Judgment, alleging Rogers's complaint was not timely filed under the Indiana Medical Malpractice Act. The trial court initially granted summary judgment to Physician but later granted Rogers's motion to correct error and denied summary judgment. The parties present several issues on appeal, which we consolidate as the following single issue: whether the trial court erred in denying summary judgment upon finding that genuine issues of material fact exist as to whether Rogers timely filed his proposed complaint. Concluding that Rogers's claim was not timely filed under the Indiana Medical Malpractice Act and summary judgment for Physician was appropriate, we reverse.

## Facts and Procedural History[1]

Rogers was experiencing painless blood in his urine and made his first appointment with Physician, a licensed urologist, on August 4, 2006. At that appointment, Physician performed a renal ultrasound which showed several lesions on Rogers's bladder and performed a flexible cystoscopy which showed defects on both sides of his bladder walls. Rogers was diagnosed with bladder cancer less than two weeks later. Physician placed Rogers on chemotherapy with periodic cystoscopy examinations so the cancer could be

---

[1] We held oral argument in this case on October 20, 2014, in Indianapolis, Indiana and would like to thank the attorneys for their excellent argument.

monitored. Between August 2006 and January 2009, Physician performed several cystoscopies on Rogers. Before performing each cystoscopy, Physician always disinfected the urology equipment with Cidex OPA; he did so without informing Rogers that manufacturer warnings, Cidex OPA package warnings, and medical literature had all advised that Cidex OPA was contraindicated for patients with bladder cancer. Rogers suffered no ill effects from the use of Cidex OPA until March 2008.

After a cystoscopy on March 10, 2008, Rogers experienced minor itching. Rogers was treated with Benadryl. On July 14, 2008, Rogers had another cystoscopy and another allergic reaction ensued. His symptoms worsened—he experienced redness and swelling in both his face and lips. Rogers was treated with Solu-Medrol and Benadryl at Lutheran Hospital. On January 7, 2009, Rogers had another cystoscopy performed, followed by his third allergic reaction. Rogers experienced swelling in his hands and developed a rash, so Physician prescribed him steroids. Later in the day, however, Rogers went to Dupont Hospital where he was further treated with intravenous steroids and Benadryl; he was also admitted for overnight observation.

On January 22, 2009, Rogers had an appointment with Dr. Mahan Menon ("Allergist").[2] After an initial consultation with Rogers, Allergist performed a skin test that confirmed Rogers was allergic to Cidex OPA. Allergist informed Rogers and Physician of the Cidex OPA allergy by letter on March 6, 2009. Although Physician

---

[2] Physician and Rogers disagree as to who referred Rogers to Allergist. Physician says he referred Rogers to Allergist. Rogers says his family practitioner referred him to Allergist.

remained Rogers's urologist until July 2009, Physician did not use Cidex OPA to disinfect the urology equipment used on Rogers after the allergy diagnosis.

Rogers, pro se, filed a proposed complaint with the Indiana Department of Insurance on March 4, 2011, alleging that the treatment rendered by Physician from August 2006 through July 2009 was negligent and below the appropriate standard of care. Physician responded by filing a Motion for Preliminary Determination and for Summary Judgment in the trial court, alleging that Rogers's claim was barred by the Medical Malpractice Act's two-year statute of limitations period. The trial court granted the motion. Rogers filed a motion to correct error, alleging there was a genuine issue of material fact as to how the statute of limitations applied. After a hearing, the trial court granted Rogers's motion to correct error and denied Physician's motion for summary judgment. This appeal followed.[3]

## Discussion and Decision

### I. Standard of Review

Physician appeals the trial court's grant of Rogers's motion to correct error. It is well established that we review a trial court's ruling on a motion to correct error for an abuse of discretion. Old Utica Sch. Pres., Inc. v. Utica Twp., 7 N.E.3d 327, 330 (Ind. Ct.

---

[3] Generally, the denial of summary judgment is an interlocutory order. Hrezo v. City of Lawrenceburg, 934 N.E.2d 1221, 1223 n.2 (Ind. Ct. App. 2010), trans. denied. An appeal from such an order requires the trial court to certify the order and this court to accept jurisdiction over the appeal. See Ind. Appellate Rule 14(B). In this case, although the trial court's order has the effect of denying Physician's motion for summary judgment, Physician is actually appealing the grant of Rogers's motion to correct error. Appellate Rule 2(H) states that a judgment is a final judgment if "it is a ruling on either a mandatory or permissive Motion to Correct Error . . . ."

In addition, after Rogers filed his appellee's brief, Physician filed with this court a Notice of Appellee's Cross-Appeal and Alternative Verified Motion for Extension of Time asserting that the Brief of Appellee raises several new issues and constitutes a cross-appeal, entitling Physician to thirty days to respond. This court accepted the notice, designated Rogers's brief a cross-appeal, and set deadlines for the filing of both parties' reply briefs.

4

App. 2014), trans. denied. "An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it or the reasonable inferences therefrom." Id.

Here, the effect of granting the motion to correct error was to set aside the entry of summary judgment for Physician. When a trial court's denial of summary judgment is challenged on appeal, "our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law." Kroger Co. v. Plonski, 930 N.E.2d 1, 4-5 (Ind. 2010); Ind. Trial Rule 56(C). A factual issue is material if it bears on the ultimate resolution of a relevant issue, and it is genuine if it is incapable of being conclusively foreclosed by reference to undisputed facts. Simon Prop. Grp., L.P. v. Michigan Sporting Goods Distribs., Inc., 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005), trans. denied. The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Manley v. Sherer, 992 N.E.2d 670, 673 (Ind. 2013). If the moving party fails to meet that burden, summary judgment is improper; if it succeeds, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact. Id. "All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party." Plonski, 930 N.E.2d at 5. "If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted." CFS, LLC v. Bank of America, 962 N.E.2d 151, 152 (Ind. Ct. App. 2012). On review, although we are limited to the designated evidence

5

that was before the trial court, we are not constrained by the claims or arguments presented to the trial court, nor the rationale behind the trial court's ruling. Manley, 992 N.E.2d at 673. The party appealing the summary judgment decision bears the burden of persuading this court that the trial court's ruling was improper. Boonville Convalescent Ctr., Inc. v. Cloverleaf Healthcare Servs., Inc., 790 N.E.2d 549, 555 (Ind. Ct. App. 2003), trans. denied.

## II. Summary Judgment

Physician argues that the Medical Malpractice Act's statute of limitations, found at Indiana Code section 34-18-7-1(b), bars Rogers's claim because the last injury occurred January 7, 2009, which places Rogers's proposed complaint—filed on March 4, 2011—outside of the two-year occurrence-based statute of limitations period. Rogers does not disagree that the last procedure occurred on January 7, 2009, but argues that the doctrine of continuing wrong applies, because Physician engaged in an entire course of negligent conduct from August 2006 through at least March 6, 2009, the day Rogers's allergy was discovered. Rogers contends that, at the very least, there is a genuine issue of material fact as to whether the doctrine of continuing wrong applies which precludes summary judgment.

## A. Statute of Limitations

The Medical Malpractice Act's statute of limitations is found in Indiana Code section 34-18-7-1(b), which provides:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect . . . .

6

This is an occurrence-based statute of limitations, "meaning that an action for medical malpractice generally must be filed within two years from the date the alleged negligent act occurred rather than from the date it was discovered." Houser v. Kaufman, 972 N.E.2d 927, 933 (Ind. Ct. App. 2012) (quotation omitted), trans. denied.

> [I]n determining whether a medical malpractice claim has been commenced within the medical malpractice statute of limitations, the discovery or trigger date is the point when a claimant either knows of the malpractice and resulting injury, or learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. . . . The issue to be determined is the point at which a particular claimant either knew of the malpractice and resulting injury, or learned of facts that would have led a person of reasonable diligence to have discovered the malpractice and resulting injury. If this date is less than two years after the occurrence of the alleged malpractice, the statute of limitations bars the claim unless it is not reasonably possible for the claimant to present the claim in the remaining time, in which case the claimant must do so within a reasonable time after the discovery or trigger date. If such date is more than two years after the occurrence of the malpractice, the claimant has two years within which to commence the action.

David v. Kleckner, 9 N.E.3d 147, 152-53 (Ind. 2014) (emphasis added) (citation omitted). "When a defendant in a medical malpractice action asserts the statute of limitations as an affirmative defense, the defendant bears the burden of establishing that the action was commenced outside the statutory period." Manley, 992 N.E.2d at 674.

## B. Physician's Argument

Physician designated evidence in support of his motion for summary judgment establishing that the last procedure he performed on Rogers using Cidex OPA and the last time Rogers suffered an allergic reaction occurred on January 7, 2009. Physician and Rogers both acknowledge that the date Rogers learned of the malpractice was March 6, 2009, when Allergist informed both of them by letter that Rogers's allergic reactions

7

stemmed from Physician's use of Cidex OPA to disinfect urology equipment used during Rogers's cystoscopy procedures.[4]   Accordingly, Physician argues that Indiana Code section 34-18-7-1(b) bars Rogers's claim because the last injury occurred on January 7, 2009, he discovered the injury within two years of that occurrence, and it was reasonably possible for him to file his claim within the remaining time.

Physician argues that the only exception to Rogers's claim being barred is if after discovery, "it [wa]s not reasonably possible for the claimant to present the claim within the remaining time." See David, 9 N.E.3d at 152-53.  Physician argues that Rogers had twenty-two months to file the claim after discovering it in March 2009, and therefore, the exception does not apply.

## C. Rogers's Argument

Rogers argues that the doctrine of continuing wrong applies, or that at least there is a genuine issue of material fact as to whether it applies, because although he had allergic reactions to three separate cystoscopies (March 10, 2008; July 14, 2008; and January 7, 2009), the Physician 1) provided treatment below the requisite standard of care from August 2006 through March 2009; 2) failed to investigate the cause of the allergic reactions; 3) should have discovered the cause of the allergic reactions sooner by reading

---

[4]  The trial court found in its order granting Rogers's motion to correct error that there was a genuine issue of material fact as to "whether the prior allergic reactions Mr. Rogers suffered following any one of his previous exposures to Cidex OPA on March 10, 2008, July 14, 2008, or January 7, 2009, would have led a reasonably diligent person to the discovery of [Physician's] alleged medical malpractice." Appellants' Public Appendix at 13.  Physician does not contend that Rogers should have, in the exercise of reasonable diligence, discovered the malpractice earlier than March 6, 2009.  Moreover, even if there is an issue of fact about whether he knew of facts that should have led him to this discovery earlier, it is not a material issue of fact.  An earlier discovery date would only mean that Rogers's complaint should have been filed even earlier than the date Physician argues it should have been filed and would not preclude summary judgment on these facts.

manufacturer warnings and medical literature that was available; and 4) did not refer Rogers to an allergist for diagnosis.[5] Pointing out that each subsequent use of Cidex OPA made the ensuing allergic reaction more severe—which was prolonged by Physician's failure to diagnose—Rogers argues that Physician's combined negligence was a continuing wrong which lasted until Allergist made the diagnosis on March 6, 2009. Thus, he argues the statute of limitations period did not begin to run until that date.

## D. Applicability of the Doctrine of Continuing Wrong

Physician has established that Rogers did not file his complaint until March 4, 2011, which is outside of the statute of limitations period if the last negligent act occurred January 7, 2009. Rogers argues that the doctrine of continuing wrong saves his claim because Physician's negligence continued until March 6, 2009. This, Rogers argues, is the day the statute of limitations period began to run.

> The doctrine of continuing wrong applies where an <u>entire course of conduct combines to produce an injury</u>. When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. In order to apply the doctrine, the <u>plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature</u>. The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place.

<u>Gradus-Pizlo v. Acton</u>, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012) (emphasis added) (citations omitted). For the doctrine to apply, the physician's conduct must be more than a single act. <u>See</u> <u>id.</u>

---

[5] As noted in the facts, and acknowledged at oral argument, there is a dispute about whether or not Physician referred Rogers to Allergist. This does not appear to be a material dispute, however, given the resolution of this issue.

9

In Garneau v. Bush, 838 N.E.2d 1134, 1146 (Ind. Ct. App. 2005), trans. denied, we reversed the trial court's grant of summary judgment in favor of the doctor pursuant to Indiana Code section 34-18-7-1(b). The patient in Garneau had her hip replaced on March 17, 1998, with an obsolete prosthesis. Id. at 1138. After the replacement, the patient experienced pain and dislocated her new prosthesis twice. Id. Instead of recommending revision, the doctor treated the patient by prescribing pain medication, ordering x-rays, evaluations, and physical therapy for more than six months before the patient ultimately had to have a different prosthesis installed on November 8, 1999. Id. at 1139. The patient filed a complaint for malpractice on August 28, 2000, and the trial court found it untimely and granted summary judgment to the doctor. Id. On review, we first held that the initial act of malpractice occurred on March 17, 1998, the day the obsolete prosthesis was installed. That is the date the statute of limitations would have begun to run if the doctrine of continuing wrong did not apply.

However, the patient asserted that the doctrine of continuing wrong should apply, because the doctor's negligent treatment was continuous until November 8, 1999, thus tolling the commencement of the statute of limitations. Id. at 1143-46. We held that under these facts and circumstances, the patient had established a genuine issue of material fact as to whether the doctor's installation of an obsolete prosthesis, followed by continuous treatment with prescription pain medication and failure to recommend revision at any point six months or more following the surgery, constituted a continuing wrong. Id. at 1145. Noting that "a plaintiff may not sit idly by if they discover facts that alert them that they have a cause of action," and that the doctrine of continuing wrong only tolls the statute of

limitations until such time as the plaintiff learns facts which should lead to the discovery of the cause of action, we stated that if a jury determined that the doctor's actions constituted a continuing wrong, the statute of limitations would have begun to run on November 8, 1999. Id. Because the patient filed the complaint within two years of that date, the doctrine of continuing wrong, if applicable, would save the patient's complaint from dismissal based on the statute of limitations. Id. Accordingly, summary judgment was improper because there were genuine issues of material fact about when the statute of limitations began to run. Id.

Here, the only conduct Rogers has shown to be continuous—the cystoscopy procedures over the three year period—were injury-producing on three separate occasions. This conduct is unlike the injury-producing conduct in Garneau, where the doctor's affirmative actions were sufficient to raise a genuine issue of material fact as to whether all of the physician's conduct combined produced an injury. Id. at 1143. Rogers has not shown any continuous conduct by Physician beyond the date of the last injury-producing cystoscopy—January 7, 2009—that, combined, caused an injury.

More recently, we refused to apply the doctrine in a case more analogous to the current one. In Gradus-Pizlo, we reversed a trial court's denial of summary judgment because there was no genuine issue of material fact regarding whether the plaintiff's claim was untimely pursuant to Indiana Code section 34-18-7-1(b). 964 N.E.2d at 871. The plaintiff filed a malpractice claim against a doctor on April 1, 2008, claiming the doctor had prescribed his wife, the patient, medicine on March 12, 2006 that ultimately led to her death. Id. at 867-68. The patient took the medicine for over two weeks before a high

11

potassium level attributable to the medicine led to cardiac arrest on March 29, 2006, at which time the medication was discontinued. The patient died on April 12, 2006. Id. The doctor filed a motion for summary judgment alleging the April 1, 2008 complaint was untimely.

To avoid the claim being barred by the statute of limitations, the plaintiff alleged that the doctor's "entire course of care" throughout the patient's hospitalization until the day of her death resulted in a continuing wrong, claiming the statute of limitations should be tolled. Id. at 871. Despite the patient's daily consumption of medicine, we granted summary judgment to the doctor, holding that the alleged medical malpractice consisted of a single act—the prescription of medicine—not an entire course of conduct. Id. In determining when the injury occurred, we did not include the entire period of time that the patient was under the doctor's care, nor the two weeks during which the patient continued to take the medication after the doctor prescribed it. We held the act of malpractice occurred on March 12, 2006, when the doctor prescribed the medication, and the discovery date was March 29, 2006, when the patient's condition brought to light the possibility that the doctor may have been negligent in doing so. Id. at 870. With "1 year, 11 months, and 2 weeks" of the statute of limitations period remaining on the date of discovery, we held the April 1, 2008 complaint was barred by the statute of limitations. Id. at 870-71.

The Physician's actions here are similar to the physician's actions in Gradus-Pizlo. There, this court rejected the plaintiff's argument that the doctor's entire course of care created a continuing wrong and held that the two year statute of limitations period began to run the day the medicine was prescribed, not the day the patient stopped taking the

12

medicine and not the day the patient died.  Id.  We did this even though the medicine led to the patient's death.  Rogers makes the same argument but does so without distinguishing the present case from Gradus-Pizlo.  Rogers alleges that Physician was negligent from his first treatment of Rogers in August 2006 through at least March 6, 2009,[6] when he did not investigate the cause of the allergic reactions, read the warning labels or medical literature, or recognize on his own that Cidex OPA was causing Rogers's increasingly-serious allergic reactions.  Rogers has failed to show an issue of material fact regarding the doctrine of continuing wrong.

Rogers alleged several questions of fact both in his brief and at oral argument.  However, we conclude that these questions of fact are immaterial to the application of the Medical Malpractice Act's occurrence-based statute of limitations period.  Although it is plausible that all of Physician's negligence prior to Rogers's last allergic reaction would have fallen under the doctrine of continuing wrong, thus raising an issue of fact, it is not disputed that Physician last saw Rogers on January 7, 2009.  This was the last opportunity Physician had to diagnose Rogers.[7]  See Hopster v. Burgeson, 750 N.E.2d 841, 858-59 (Ind. Ct. App. 2001) (holding the date that the doctor last had an opportunity to diagnose

---

[6] Rogers alleges that he was still under Physician's care until July 2009 and that he continued to experience injuries related to his Cidex OPA exposure well into 2010.  However, "[t]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of [the malpractice] even if his relationship with the tortfeasor continues beyond that point."  Garneau, 838 N.E.2d at 1145 (quoting E Corp. v. Ramco Indus., Inc., 717 N.E.2d 642, 645 (Ind. Ct. App. 1999)).  Therefore, Physician's continuing treatment of Rogers past March 6, 2009, is of no consequence.

[7] The dissent believes that Physician's course of conduct did not end on January 7, 2009, but rather, it continued until at least March 6, 2009 when Allergist informed Rogers of the allergy.  However, this argument conflates an occurrence based statute of limitations with a discovery based statute of limitations.  Although Physician remained Rogers's urologist until July 2009, January 7, 2009 is the date of the last occurrence from which the statute of limitations is measured.

patient was the date of patient's last appointment, and therefore, that is the day the statute of limitations began to run). Accordingly, any dispute of fact about the doctrine's application prior to the January 7, 2009 appointment is immaterial and insufficient to preclude summary judgment for Physician.

We would have to ignore our case law refusing to apply the doctrine to isolated instances of negligence in order to accept Rogers's argument. See Babcock v. Lafayette Home Hosp., Woman's Clinic, 587 N.E.2d 1320, 1323 (Ind. Ct. App. 1992) (refusing to apply the doctrine of continuing wrong to the defendant hospital's two isolated acts of negligence). On these facts, the doctrine of continuing wrong does not apply.

### E. Exception To Claim Being Barred

Because the doctrine of continuing wrong does not apply, Rogers's claim will only be saved if it was not reasonably possible for him to file the claim within the two-year statutory limitations period. See David, 9 N.E.3d at 153.

When Rogers discovered the alleged malpractice, he had twenty-two months remaining to present his claim—almost the full two years granted by the statute. He has not alleged any disability or other reason why he could not bring his claim within this time. Accordingly, it was reasonably possible for him to present the claim within the statute of limitations period. See Coffer v. Arndt, 732 N.E.2d 815, 821 (Ind. Ct. App. 2000) (holding that where claimant discovered malpractice twenty-two months prior to the expiration of the statute of limitations, he was required to file within that time), trans. denied; see also Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 697-98 (Ind. 2000) (holding that where claimant discovered malpractice eleven months before the expiration of the statute of

limitations, it was reasonably possible to file a claim within that time); cf. Moyer v. Three Unnamed Physicians, 845 N.E.2d 252, 259 (Ind. Ct. App. 2006) (holding that where discovery of alleged malpractice by one doctor was made with only eleven days remaining before expiration of statute of limitations, filing within that time was not reasonably possible and claimant just had to file within a reasonable time; further holding with respect to a second doctor that it was reasonably possible to file within the statute of limitations when discovery of alleged malpractice was made with six months remaining).

Physician has met his burden of proving that the action was commenced outside the statutory period. He last saw Rogers on January 7, 2009. The malpractice was discovered on March 6, 2009, which was within the two year period following the last negligent act. It was also reasonably possible for Rogers to file his claim within a twenty-two month time period. We conclude the purely occurrence-based limitation period is applicable and Rogers was required to file his claim by January 7, 2011.

## Conclusion

Concluding that Physician's last act of negligence occurred January 7, 2009 and that the doctrine of continuing wrong does not apply, Rogers's claim is barred by the Medical Malpractice Act's occurrence-based statute of limitations. Accordingly, summary judgment is appropriate for Physician, and the trial court abused its discretion in finding otherwise and granting Rogers's motion to correct error. We reverse.

Reversed.

BAKER, J., concurs.

KIRSCH, J., dissents with opinion.

15

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANONYMOUS PHYSICIAN and<br>ANONYMOUS MEDICAL GROUP,<br><br>    Appellants-Defendants,<br><br>        vs.<br><br>RICHARD LOUCKS ROGERS,<br><br>    Appellee-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.  02A03-1401-CT-1 |

**KIRSCH, Judge,** *dissenting*.

I respectfully dissent.

The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 699 (Ind. 2000). When the doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Burton v. Elskens*, 730 N.E.2d 1281, 1284 (Ind. Ct. App. 2000). "The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place." *Coffer v. Arndt*, 732 N.E.2d 815, 821 (Ind. Ct. App. 2000), *trans. denied*.

Here, Anonymous Physician was Richard Rogers' urologist from the date of his first appointment in August 2006 through July 2009.  The course of conduct giving rise to this action was Physician's use of Cidex OPA to disinfect the urology equipment, contrary to the standard of care, and his failure to diagnose and advise Rogers of such usage after Rogers' repeated allergic reactions.  This course of conduct commenced in August 2006.  It continued at least until March 6, 2009, the date that the Allergist to whom Physician stated he referred Rogers, advised both Rogers and Physician that Rogers was allergic to Cidex OPA.  Because Rogers' Proposed Complaint for Medical Malpractice was filed on March 4, 2011, it was timely filed.