**FILED**

Jun 26 2020, 10:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Frederick W. Schultz
Greene & Schultz
Bloomington, Indiana

Gerald W. Mayer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Charles C. Dubes
Larry L. Barnard
Carson, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Effie Rogers, Mother and a/n/f
and as Personal Representative
of the Estate of Deborah
Williams, deceased,

*Appellant-Defendant,*

v.

Dr. D and Clinic C,

*Appellees-Plaintiffs.*

June 26, 2020

Court of Appeals Case No.
20A-CT-258

Appeal from the St. Joseph Circuit
Court

The Honorable John E. Broden,
Judge

Trial Court Cause No.
71C01-1906-CT-233

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Effie Rogers, Mother and a/n/f and Personal Representative of the Estate of Deborah Williams (Rogers), appeals the trial court's grant of summary judgment in favor of Appellees-Respondents, Dr. D and Clinic C (Collectively, Dr. D), concluding, as a matter of law, that Rogers' claims are barred by the statute of limitations.

We affirm.

# ISSUE

Rogers presents three issues on appeal, which we consolidate and restate as the following single issue: Whether, as a matter of law, Rogers' claims, brought under the Medical Malpractice Act, are barred by the statute of limitations.

# FACTS AND PROCEDURAL HISTORY

On April 17, 2015, Deborah Williams (Williams) consulted Dr. D for complaints of right hip pain. Williams was a returning patient as Dr. D had previously performed a left hip decompression surgery in 2003 and a total right hip replacement surgery in 2007. After the consultation, Dr. D scheduled Williams for surgery and she was admitted to the Memorial Hospital of South Bend on May 18, 2015, undergoing surgery that same day. While performing the surgery, Dr. D noted that the stem of Williams' prosthetic was firmly fixed, and he made numerous attempts to cut and remove the prosthesis. During one of these attempts, Dr. D shattered Williams' femur. In the recovery room, a subluxation of Williams' right hip was discovered and she was returned to the

operating room for reduction. At all times during these proceedings, Dr. D was acting in the course and scope of his employment with Clinic C.

[5] Williams remained in the hospital following the surgery. On May 27, 2015, Dr. D issued his Final Progress Note, memorializing his intent to discharge Williams later that day. However, a nurse tending to Williams requested a consultation because of Williams' complaints of persistent hypertension, clumsiness, and cold limbs. Williams was not discharged and received further treatment at the hospital by other medical professionals, with Dr. D remaining her attending physician. She passed away on June 20, 2015. Dr. D wrote the death discharge on June 20, 2015, summarizing the details of her admittance, surgery, and treatment.

[6] On June 16, 2017, Rogers filed a Proposed Complaint for damages under the Medical Malpractice Act with the Indiana Department of Insurance stemming from the medical treatment and death of Williams. Rogers alleged that the care and treatment Williams received from Dr. D during the surgical procedure and post-operative follow-up were substandard and caused her death. Subsequently, Rogers made her submission to the Medical Review Panel, setting forth with specificity the dates on which the alleged medical malpractice by Dr. D occurred.

[7] On June 24, 2019, before the medical review panel issued its determination, Dr. D filed a Petition for Preliminary Determination of Law with the trial court and moved for summary judgment, asserting that Williams' Proposed Complaint

was barred by the two-year statute of limitations. On August 27, 2019, Williams filed a reply in opposition to the motion for summary judgment. On January 3, 2020, following a hearing, the trial court granted summary judgment to Dr. D, concluding that, as a matter of law, Rogers' claims were time-barred by the two year statute of limitations under the Medical Malpractice Act.

[8] Rogers now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[9] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[10] We observe that, in the present case, the trial court entered findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id.*

## II. *Analysis*

[11] Rogers contends that the trial court erred in granting summary judgment to Dr D based on the application of the statute of limitations under the Medical Malpractice Act.[1] Because Dr. D was Williams' attending physician from Williams' admittance to the hospital on May 18, 2015 through her passing on June 20, 2015, and engaged in an entire course of alleged negligent conduct during this period, Rogers maintains that the doctrine of continuing wrong applies, resulting in a timely filing of the proposed complaint.

### A. *Statute of Limitations*

[12] The Medical Malpractice Act's statute of limitations is located in Indiana Code section 34-18-7-1(b), which provides, in pertinent part, that:

---

[1] Typically, a proposed medical malpractice complaint must first be filed with the Department of Insurance for review by a medical panel prior to filing the complaint in court. *See* I.C. § 34-18-10-1. However, I.C. § 34-18-11-1(a) creates an exception that a court, as here, can acquire jurisdiction over the subject matter and the parties to the proposed complaint to make a preliminary determination of an affirmative defense.

A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect[.]

Accordingly, the Act institutes an occurrence-based statute of limitations, "meaning that an action for medical malpractice generally must be filed within two years from the date the alleged negligent act occurred rather than from the date it was discovered." *Houser v. Kaufman*, 972 N.E.2d 927, 933 (Ind. Ct. App. 2012), *trans. denied*.

[I]n determining whether a medical malpractice claim has been commenced within the medical malpractice statute of limitations, the discovery or trigger date is the point when a claimant either knows of the malpractice and resulting injury, or learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury . . . The issue to be determined is the point at which a particular claimant either knew of the malpractice and the resulting injury, or learned facts that would have led a person of reasonable diligence to have discovered the malpractice and resulting injury. If this date is less than two years after the occurrence of the alleged malpractice, the statute of limitations bars the claim unless it is not reasonably possible for the claimant to present the claim in the remaining time, in which case the claimant must do so within a reasonable time after the discovery or trigger date. If such date is more than two years after the occurrence of the malpractice, the claimant has two years within which to commence the action.

*David v. Kleckner*, 9 N.E.3d 147, 152-53 (Ind. 2014) (citation omitted). "When a defendant in a medical malpractice asserts the statute of limitations as an

affirmative defense, the defendant bears the burden of establishing that the action was commenced outside the statutory period." *Manley v. Sherer*, 992 N.E.2d 670, 674 (Ind. 2013).

[13] The designated evidence reflects that, in her submission of evidence to the medical review panel, Rogers identified Dr. D's alleged negligent conduct as follows:

> A. Dr. D should not have scheduled Williams for a revision surgery given her recent cancer treatment;
>
> B. Dr. D should not have scheduled Williams for a hip revision surgery absent convincing evidence that a loosening prosthesis was her problem;
>
> C. Dr. D should have, at the least, had an internist clear Williams for surgery or he should have done so himself, in order to determine that she was a good surgical candidate;
>
> D. Dr. D should have terminated the revision and closed when it became manifest that Williams' prosthesis was not loosening but was in fact firmly fixed;
>
> E. Dr. D should have had Williams followed by the hospitalist post-op; and
>
> F. Dr. D should have recognized that Williams' medical condition had deteriorated to the point that he was not able to manage her medically.

(Appellant's App. Vol. II, pp. 28-31).

The act of malpractice, as alleged in the Proposed Complaint, is focused on Dr. D's revision surgery; without the surgery and subsequent post-operative treatment, Williams might not have passed away. As such, May 18, 2015, is the occurrence date. However, by May 27, 2015, *i.e.,* the failed discharge date, Williams had sufficient information that would have led a reasonably diligent person to believe a medical mistake might have been made as a nurse tending to Williams requested a further consultation because of Williams' complaints of persistent hypertension, clumsiness, and cold limbs. "A plaintiff does not need to be told malpractice occurred to trigger the statute of limitations." *Brinkman v. Beuter*, 879 N.E.2d 549, 555 (Ind. 2008). Thus, with an alleged act of malpractice occurring on May 18, 2015, and a trigger or discovery date of May 27, 2015, Rogers had sufficient information that would have led a reasonably diligent person to the discovery of malpractice during the remaining 1 year, 11 months, and approximately 3 weeks of the two-year statute of limitations period. As Rogers filed her Proposed Complaint on June 16, 2017, her action is barred by the statute of limitations.

### B. *Continuing Wrong Doctrine*

In an effort to save her claim from being tolled, Rogers relies on the continuing wrong doctrine by maintaining that Dr. D's entire course of treatment as Williams' attending physician, from her admittance to the hospital until her passing on June 20,1015, culminated into the resulting injury.

> The doctrine of continuing wrong applies where an *entire course of conduct combines to produce an injury*. When this doctrine attaches,

the statutory limitations period begins to run at the end of the continuing wrong act. In order to apply the doctrine, *the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature.* The doctrine of continuing wrong is not an equitable doctrine, rather, it defines when an act, omission, or neglect took place.

*Gradus-Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012) (emphasis added) (citations omitted). For the doctrine to apply, the physician's conduct must be more than a single act. *See id.*

[16] In *Garneau v. Bush*, 838 N.E.2d 1134, 1146 (Ind. Ct. App. 2005), *trans. denied*, relied upon by Rogers, we reversed the trial court's grant of summary judgment in favor of the doctor. The patient in *Garneau* had her hip replaced on March 17, 1998, with an obsolete prosthesis. *Id.* at 1138. After the replacement, the patient experienced pain and dislocated her new prosthesis twice. *Id.* Instead of recommending revisions, the doctors treated the patient by prescribing pain medication, ordering x-rays, evaluation, and physical therapy for more than six months before the patient ultimately had to have a different prosthesis installed on November 8, 1999. *Id.* at 1139. The patient filed a complaint for malpractice on August 28, 2000, and the trial court considered it untimely and granted summary judgment to the doctor. *Id.* On review, we first held that the initial act of malpractice occurred on March 17, 1998, the day the obsolete prosthesis was installed. *Id.* However, the patient asserted that the doctrine of continuing wrong should apply, because the doctor's negligent treatment was continuous until November 8, 1999, thus tolling the commencement of the

statute of limitations. *Id*. at 1143-46. We held that under these facts and circumstances, the patient had established a genuine issue of material fact as to whether the doctor's installation of an obsolete prosthesis, followed by continuous treatment with pain medication and failure to recommend revision at any point during six months or more following the surgery, constituted a continuing wrong. *Id*. at 1145.

[17]     On the other hand, in *Anonymous Dr. A v. Foreman*, 127 N.E.3d 1273, 1276 (Ind. Ct. App. 2019), a patient instituted a medical malpractice action against a physician, alleging that the physician surgically repaired the patient's hip fracture by inserting a femoral rod into the patient's femur which he negligently placed and which resulted in the rod's fracture. The procedure occurred on November 25, 2015, with the patient commencing an action on January 19, 2018. *Id*. After the trial court denied the physician's motion for summary judgment, this court reversed, concluding that the claims were barred by the statute of limitations. *Id*. at 1279. We reached this conclusion by holding that the misplacement of the femoral rod during surgery was an isolated event, not conduct of a continuing nature. *Id.* at 1278. We noted that the physician's monitoring of the patient before and after the revision surgery did not set forth any facts indicating that the physician's conduct after inserting the femoral rod amounted to malpractice. *Id.*

[18]     Here, like in *Foreman*, Dr. D's decision to schedule the surgery and his corresponding decision not to terminate it were isolated events and not conduct of a continuing nature. Likewise, his decision not to consult an internist to

obtain a medical clearance examination before surgery, identified as presumed negligent in the Proposed Complaint, was an isolated event as it can be seen independent and distinct from the surgery itself.[2]  Rogers designated no evidence in her Proposed Complaint that any treatment decisions made by Dr. D after the surgery aggravated the injury.  Thus, distinguished from *Garneau*, while Dr. D monitored Williams before and after the surgery, Rogers fails to put forth any specific facts to establish that Dr. D.'s conduct after the revision surgery amounted to malpractice.

[19]  In an effort to fit her claim within the premise of *Garneau*, Rogers contends that we have to focus on Dr. D's overall relationship with Williams as her attending physician, who provided continuous care from the date of admittance until her death.  However, we remind Rogers that "Indiana courts understand the [Medical Malpractice Act] to cover curative or salutary *conduct* of a health care provider acting within his or her professional capacity."  *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011) (emphasis added).  In this light, the Act defines malpractice as "a tort or breach of contract based on health care or professional services that were provided, or should have been provided by a health care provider, to a patient."  I.C § 34-18-2-18.  Accordingly, the medical malpractice act punishes negligent conduct or care provided to a patient by a healthcare provider, regardless of the specific ongoing relationship between

---

[2] Even if Dr. D's decision not to consult an internist can be characterized as conduct of a continuing nature, this event terminated on May 27, 2015 with the issuance of Dr. D's Final Progress Note, and therefore, with a filing date of June 16, 2017, the claim would still be barred under the statute of limitations.

them. Absent an explicit allegation of negligent treatment, Dr. D cannot be held responsible based solely on the nature of his relationship as attending physician to Williams.

[20] Accordingly, as we conclude that Dr. D's act of negligence occurred on May 18, 2015, and that the doctrine of continuing wrong does not apply, Rogers' claim is barred by the Medical Malpractice Act's occurrence-based statute of limitations.

## CONCLUSION

[21] Based on the foregoing, we hold that, as a matter of law, Rogers' claims, brought under the Medical Malpractice Act, are barred by the statute of limitations.

[22] Affirmed.

[23] Mathias, J. and Tavitas, J. concur