# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEY FOR APPELLEES TOWN
OF YORKTOWN, DELAWARE COUNTY
SURVEYOR, and DELAWARE COUNTY
DRAINAGE BOARD:

**MICHAEL R. MOROW**
Stephenson Morow & Semler
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

**FILED**
Oct 10 2014, 9:47 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| SUSAN A. SNYDER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1405-CT-332 |
| | ) | |
| TOWN OF YORKTOWN, DELAWARE | ) | |
| COUNTY SURVEYOR, DELAWARE | ) | |
| COUNTY DRAINAGE BOARD, RANDALL | ) | |
| MILLER & ASSOCIATES, INC., and | ) | |
| WATSON EXCAVATING, INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne Vorhees, Judge
Cause No. 18C01-1309-CT-60

**October 10, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Susan A. Snyder appeals the trial court's grant of a motion to dismiss filed by Town of Yorktown, Delaware County Surveyor, and Delaware County Drainage Board (collectively "the Defendants"). The sole dispositive issue presented for our review is whether the trial court erred when it granted the Defendants' motion to dismiss as to Snyder's claims for trespass and inverse condemnation. Concluding that the allegations in the complaint fail to establish any set of circumstances under which Snyder would be entitled to relief for trespass, but that her complaint sufficiently states a claim for inverse condemnation, we affirm in part, reverse in part, and remand.[1]

## Facts and Procedural History

The relevant facts alleged in the complaint indicate that Snyder owns a parcel of property located on South Andrews Road in the Town of Yorktown, Delaware County ("the Property"). The Property is subject to a primary mortgage and a home equity loan in favor of National City Mortgage. A regulated drain, known as the Applegate 120 Regulated Ditch, is located on the Property. Sometime in 2007, the Town of Yorktown (the "Town") decided that it wanted to extend and connect its closed storm sewer system to the regulated drain on the Property. On September 25, 2007, Tim Kelty, the Town's manager, emailed Snyder

---

[1] We note that, following the trial court's grant of the Defendants' motion to dismiss Snyder's claims for trespass and inverse condemnation, Snyder moved for voluntary dismissal of her additional claims against the Defendants' and her claims against Randall Miller & Associates, Inc., and Watson Excavating, Inc. The trial court granted that motion, dismissed the additional claims without prejudice, and entered a final judgment. Pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal, and therefore we have included Randall Miller & Associates and Watson Excavating in the case caption.

stating that the Town "is working to improving storm drainage in the area around [the Property]. In order to do that our engineer has recommended acquiring additional right-of-way or easement along Andrews Road." Appellant's App. at 63. Snyder did not give her consent for any additional right-of-way or easement. In September or early October 2007, the Delaware County Drainage Board (the "Drainage Board") approved the drainage project. On October 15, 2007, the Town and the Drainage Board entered into a written agreement which acknowledged that the Town would provide routine maintenance for the pipe that connected the closed sewer system to the regulated drain, but that general maintenance and repair of the closed sewer system remained the responsibility of the Drainage Board.

On an unknown date in the fall of 2007, at the direction of the Defendants, contractors entered onto the Property, excavated a drainage trench, and installed a storm pipe that terminated above ground at the mouth of the regulated drain. According to the Snyder's complaint, this "invasion of [Snyder's] private property right was done without her consent…." *Id*. at 24. The effect of the drainage project and "damages caused thereby on [Snyder] was immediate and continues unabated from the date of the beginning of the construction through the present." *Id*. at 25. Since the project was completed, storm water, debris, and accompanying pollutant runoff has been concentrated to continuously flow onto the regulated drain and the Property to such an extent that roots of long-established trees are exposed. Snyder has suffered and will continue to suffer a diminution in the market value of her property as well as an unwanted aesthetic appearance of her property.

3

Snyder claims that from 2007 to 2011, the Defendants verbally assured her that they had legal authority to extend the easement related to the regulated drain on the Property. Snyder also claims that she was misled and unable to obtain information as to which entity was responsible for the drain after it was connected to the Town's sewer system. However, in July 2011, pursuant to her open records request, the Town produced to Snyder the agreement between the Town and the Drainage Board which provided that the Drainage Board had jurisdiction over and responsibility for the regulated drain.

In 2012, Snyder hired legal counsel. On March 23, 2012, her counsel sent a letter to the Town and the Drainage Board seeking information regarding the drain project. In the letter, counsel stated, "It is our belief that Ms. Snyder has been damaged by this project for which she has not been compensated." *Id.* at 84.

On March 5, 2013, Snyder served the Defendants with a tort claim notice indicating her intent to sue them for trespass. Thereafter, on September 6, 2013, Snyder filed a thirty-one-page complaint against the Defendants which included the following: count I, quiet title; count II, declaratory relief; count III, trespass; count IV, unconstitutional partial taking; and claims A through O, numerous untitled additional claims for relief. On November 1, 2013, the Defendants filed a motion to dismiss counts III and IV of Snyder's complaint for failure to state a claim upon which relief can be granted pursuant to Indiana Trial Rule 12(B)(6). The trial court held a hearing on the motion to dismiss on January 22, 2014. On April 15,

4

2014, the trial court granted the motion and dismissed counts III and IV. This appeal ensued.[2]

**Discussion and Decision**

Snyder appeals the trial court's grant of the Defendants' motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). We review de novo the trial court's grant or denial of such a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 122 (Ind. 2010). A motion to dismiss under Rule 12(B)(6) "'tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief.'" *Veolia Water Indpls., LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 4 (Ind. 2014) (quoting *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006)), *clarified on reh'g*, 12 N.E.3d 240. "When evaluating the trial court's grant or denial of a Rule 12(B)(6) motion, this Court 'accept[s] as true the facts alleged in the complaint,' and 'should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the [non-moving] party.'" *Id.* We will affirm a dismissal under Trial Rule 12(B)(6) only if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *LBM Realty, LLC v. Mannia*, 981 N.E.2d 569, 577 (Ind. Ct. App. 2012).

---

[2] As noted in footnote 1 above, this appeal concerns only the trial court's dismissal of counts III and IV.

**Section 1 – Dismissal of Trespass Claim**

Snyder asserts that the trial court erred in granting the Defendants' motion to dismiss her trespass claim based upon her failure to submit timely notice pursuant to the Indiana Tort Claims Act ("ITCA"). The ITCA provides that "a tort claim against a government entity is barred unless the claimant provides the entity with notice of the claim within 180 days of the loss." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013) (citing Ind. Code § 34-13-3-8).[3] We have previously held that a loss occurs for the purpose of triggering the 180-day notice period when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered, that an injury had been sustained as a result of the tortious act of another. *Reed v. City of Evansville*, 956 N.E.2d 684, 691 (Ind. Ct. App. 2011), *trans. denied*, 2012. In her complaint, Snyder alleged that the Defendants committed the tort of trespass beginning in the fall of 2007, when the drainage project on her property began. Snyder further alleged that by March 2012, she knew that she "had been damaged" by the project. Appellant's App. at 84. Thus, whether the loss is deemed to have occurred in the fall of 2007 or in March 2012, there is no question that Snyder's tort claim notice, submitted on March 5, 2013, was filed long after the 180-day notice period expired.

Nevertheless, Snyder contends that certain circumstances excuse noncompliance with

---

[3] Compliance with the notice provisions of the ITCA is a procedural precedent which a plaintiff must prove and which the trial court must determine prior to trial. *Brown v. Alexander*, 876 N.E.2d 376, 383 (Ind. Ct. App. 2007), *trans. denied* (2008). If a plaintiff has failed to give the required notice, the defendant/government entity has an affirmative defense of noncompliance which must be raised in a responsive pleading to the plaintiff's complaint. *Id.* If the defendant raises such affirmative defense, the burden shifts to the plaintiff to prove compliance with the ITCA's notice provisions. *Id.* Here, the Defendants properly raised Snyder's noncompliance as an affirmative defense in their motion to dismiss. Thus, the burden shifted to Snyder to prove compliance.

the 180-day notice period and/or justify tolling of the notice period. Specifically, she relies on the doctrines of fraudulent concealment, administrative inaction, and continuing wrong as such justification. She also directs us to the doctrine of substantial compliance to avoid dismissal of her claim. We will address her arguments in turn.

### Section 1.1 – Fraudulent Concealment

Snyder first argues that the Defendants should be estopped from asserting her untimely tort claim notice as a basis for dismissal pursuant to the doctrine of fraudulent concealment. "Fraudulent concealment is an equitable doctrine that operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim." *Johnson v. Hoosier Enters. III, Inc.*, 815 N.E.2d 542, 549 (Ind. Ct. App. 2004) (quoting *Doe v. Shults-Lewis Child & Family Servs.*, 718 N.E.2d 738, 744 (Ind. 1999)), *trans. denied* (2005). Pursuant to the doctrine, a defendant is estopped from asserting the statute of limitations as a defense if the defendant, by deception or violation of a duty, has concealed material facts from the plaintiff and thereby prevented discovery of a wrong. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 698 (Ind. 2000). However, "[w]hen the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence, the statute of limitations begins to run, regardless of any fraudulent concealment perpetrated by defendant." *Doe v. United Methodist Church*, 673 N.E.2d. 839, 844 (Ind. Ct. App. 1996), *trans. denied* (1997). Indeed, a plaintiff must exercise due diligence in commencing her action after the equitable grounds cease to operate as a valid

7

basis for causing delay. *Id.*

Snyder maintains that she has alleged ample facts in her complaint to show that the Defendants fraudulently concealed both their authority to enter her property and their jurisdiction over the regulated drain located on her property. In essence, Snyder argues that the Defendants prevented her from discovering the fact that she was wronged and which entity was responsible for the wrong such that her untimely notice of claim should be excused. Snyder's argument misses the mark. Regardless of any alleged concealment perpetrated by the Defendants, it is clear from the allegations in the complaint that by July 2011, Snyder had actual knowledge that an agreement concerning the drain existed between the Town and the Drainage Board and, pursuant to that agreement, the Drainage Board had authority over the drain. Moreover, the well-pleaded facts demonstrate that, at the latest, Snyder knew by March 23, 2012, that she had suffered losses that could be attributed to the actions of the Defendants. Therefore, Snyder discovered her cause of action at the latest on that date, and the equitable grounds ceased to operate as a valid basis causing delay. Snyder's untimely March 2013 tort claim notice is not excused on the basis of fraudulent concealment.

### Section 1.2 – Administrative Inaction

In a similar argument, Snyder asserts that so-called "administrative inaction" by the Defendants tolled the ITCA notice period. Appellant's Br. at 18.[4] Specifically, Snyder

---

[4] Snyder relies on *City of Lake Station v. State ex. Rel. Moore Real Estate, Inc.*, 558 N.E.2d 824 (Ind. 1990), in support of this novel proposition. The facts of *Lake Station* are inapposite to the current case.

argues that the facts in her complaint indicate that she spent almost three years attempting to "obtain information" about which government entity had jurisdiction over and responsibility for the drain project and that the Defendants "evaded" giving her this information. *Id*.

However, as with her fraudulent concealment argument, Snyder's argument again focuses on all of the alleged relevant information that she did not have and ignores the information that she did have and when she had it. Namely, as stated above, Snyder had actual knowledge of the Drainage Board's jurisdiction over the drain as of July 2011, and she knew that she had been damaged at the latest by March 2012. Accordingly, despite any alleged administrative inaction on the part of the Defendants, Snyder discovered her cause of action by March 2012, yet did not file her tort claim notice until March 2013. This late filing is not excused by alleged administrative inaction.

## Section 1.3 – Continuing Wrong

Snyder requests that we consider the losses to her property a continuing wrong which tolled the notice period to such an extent that her March 2013 notice should be considered timely. "The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury." *Gradus-Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012). When the doctrine is applicable, the limitations period begins to run at the end of the continuing wrongful act. *Id*. In order for the doctrine to apply, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Id*. However, "the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his

cause of action even if his relationship with the tortfeasor continues beyond that point." *Fox v. Rice*, 936 N.E.2d 316, 322 (Ind. Ct. App. 2010) (quoting *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 645 (Ind. Ct. App. 1999)), *trans. denied* (2011).

Here, although the allegations in the complaint indicate that Snyder's relationship with the Defendants continued beyond the point of their entry onto her property in 2007 to complete the drainage project, the allegations also indicate that Snyder learned of facts which should have led to the discovery of her cause of action. As already stated, Snyder knew at the latest by March 2012 that she had suffered losses that could be attributed to the alleged trespass of the Defendants. Thus, Snyder had 180 days from that point to provide the Defendants with notice of her claim. Accordingly, the continuing wrong doctrine is inapplicable here and Snyder's March 2013 notice was untimely.

### Section 1.4 – Substantial Compliance

Finally, in a brief footnote, Snyder implies that she timely provided tort claim notice pursuant to the doctrine of substantial compliance. We have held that the ITCA notice requirement should be liberally applied in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied. *Brown,* 876 N.E.2d at 381. The ITCA provides that the notice must describe in a short and plain statement the facts on which the claim is based and must include

> the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

Ind. Code § 34-13-3-10. The notice must be in writing and must be delivered in person or by

registered mail.  Ind. Code § 34-13-3-12.

The purpose of the notice requirement is to provide the governmental entity the opportunity to investigate the facts surrounding a claim so that it may determine its liability and prepare a defense.  *Irwin Mort. Corp. v. Marion Cnty. Treasurer*, 816 N.E.2d 439, 446 (Ind. Ct. App. 2004).  "Substantial compliance focuses on the nature of the notice itself, and is concerned with the extent to which the form, content, and timing of the notice complies with the requirements of the notice statute."  *McConnell v. Porter Mem'l Hosp.*, 698 N.E.2d 865, 868 (Ind. Ct. App. 1998).  Stated another way, substantial compliance permits an action to proceed when the claimant has attempted to provide notice, has fallen short of the strictures of the statute, and, yet, has supplied the appropriate governmental entity with sufficient information to investigate the claim.  *Smithson v. Howard Reg'l Health Sys.*, 908 N.E.2d 265, 268 (Ind. Ct. App. 2009).

Considering the adequacy of notice, our supreme court recently reiterated that the "crucial consideration" is whether the notice supplied by the claimant of his "intent to take legal action" contains sufficient information for the government entity "to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense."  *Schoettmer*, 992 N.E.2d at 707 (citation omitted).  In *Schoettmer*, the court declined to find substantial compliance where the claimant "took no steps whatsoever to comply with the notice statute."  *Id.* (citing *Brown*, 876 N.E.2d at 383).

Snyder implies that a letter sent by her attorney to the Town and the Drainage Board, dated March 23, 2012, satisfied the purpose of the ITCA notice requirement and therefore

11

constituted substantial compliance. Snyder admits, however, that her attorney's letter was not intended as an attempt at providing tort claim notice and that it did not include the information required by Indiana Code Section 34-13-3-10. We agree with the trial court that, at best, it appears that Snyder's attorney was seeking information from the Defendants rather than seeking to give notice to the Defendants, as the letter provided no statement indicating proposed legal action. Because Snyder took no steps whatsoever to comply with the notice statute, we decline to find substantial compliance. It is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances, and therefore the trial court properly granted the Defendants' motion to dismiss Snyder's trespass claim.[5]

## Section 2 – Dismissal of Inverse Condemnation Claim

We next address the trial court's dismissal of Snyder's inverse condemnation claim.[6] Specifically, the trial court concluded that Snyder failed to strictly follow the filing procedures outlined in the eminent domain statute by failing to name a known lienholder of the property as a party in her complaint, and therefore dismissal of her claim was appropriate. We disagree.

While the State has inherent authority to take private property for public use, the Indiana Constitution and the Fifth Amendment to the United States Constitution require just

---

[5] Although not raised by the parties, it should be noted that in *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 733 (Ind. 2010), our supreme court held that inverse condemnation is the sole remedy for a governmental act that purports to exercise all rights of ownership over a parcel of land. However, because we affirm the dismissal of Snyder's trespass claim based upon ITCA noncompliance, we need not further explore this issue.

[6] In count IV of her complaint, Snyder alleged the "Unconstitutional Partial Taking" of her property. Appellant's App. at 39. We view this as a claim for inverse condemnation.

12

compensation if this authority is exercised. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010). Condemnation proceedings consist of two phases: the legislative determination of the necessity of the taking, and the judicial determination of just compensation for the taking. *Util. Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 733 (Ind. 2013). Indiana Code Chapter 32-24-1 sets forth Indiana's general eminent domain procedure, and that procedure is "initiated by a would-be condemnor filing a complaint in the trial court." *Id.* (citing Ind. Code § 32-24-1-4(a)). Indiana Code Section 32-24-1-4(b) provides in relevant part that the complaint filed by the governmental entity/condemnor must state the following:

> (1) The name of the person seeking to acquire the property. This person shall be named as the plaintiff.
>
> (2) The names of all owners, claimants to, and holders of liens on the property, if known, or a statement that they are unknown. These owners, claimants, and holders of liens shall be named as defendants.

The process of inverse condemnation allows individuals to be compensated for the loss of property interests taken for public purposes if the government fails to initiate eminent domain proceedings. *Green River Motel Mgmt. of Dale, LLC v. State*, 957 N.E.2d 640, 644 (Ind. Ct. App. 2011), *trans. denied* (2012). "If the government takes property but fails to initiate proceedings, Section 32-24-1-16 explicitly allows an owner of property acquired for public use to bring a suit for inverse condemnation to recover money damages." *Murray*, 925 N.E.2d at 731. The legislature has provided,

> A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially

13

in the manner provided in this article.

Ind. Code § 32-24-1-16. "An action for inverse condemnation requires: '(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings.'" *Murray*, 925 N.E.2d at 731 (quoting 29A C.J.S. *Eminent Domain* § 560 (2007)).

The Defendants do not disagree that Snyder's complaint alleges sufficient facts to state a claim for inverse condemnation. Rather, the Defendants moved for 12(B)(6) dismissal of Snyder's claim based upon her failure to join her mortgagee, a known lienholder of the property, as a party to the action. The Defendants asserted, and the trial court agreed, that a landowner who files an inverse condemnation claim pursuant to Chapter 1 of the eminent domain statute is required to follow the same filing procedure as would the government because the legislature has provided that an inverse condemnation claim shall be determined "substantially in the manner provided in the article." Ind. Code § 32-24-1-16. The trial court reasoned that, regardless of whether the plaintiff is the government or a property owner, "lienholders have the right to know that property in which they have an interest is the subject of a condemnation action." Appellant's App. at 266. Determining that it could not "adjudicate the rights to a piece of real estate without joining all interested parties," the court concluded that dismissal of Snyder's inverse condemnation claim was appropriate. *Id.*

Although we acknowledge the logic of the trial court's reasoning, we conclude that such reasoning has been misapplied here. Significantly, the purpose of joining interested parties in a condemnation proceeding is to protect the rights of those parties, not to shield

14

defendants from potential liability. Indeed, we have acknowledged that all interests to a single tract of real property should be joined in a condemnation action. *P.C. Mgmt., Inc. v. Page Two, Inc.*, 573 N.E.2d 434, 439 (Ind. Ct. App. 1991). However, contrary to the Defendants' assertions that the pleading requirements of Indiana Code Section 32-24-1-4(b) are mandatory and jurisdictional, our supreme court has specifically said that the failure to name all interested parties is not a jurisdictional defect in condemnation actions. *Powers v. City of Lafayette*, 622 N.E.2d 1311, 1312 n.2 (Ind. Ct. App. 1993) (citing *Kosciusko Cnty. REMC, Inc. v. NIPSCO*, 248 Ind. 482, 498, 229 N.E.2d 811, 822 (1967)), *trans. denied* (1994). This is because "[t]he law is settled that no one's rights may be adversely affected if he is not a party to the litigation …." *Wyatt-Rauch Farms, Inc. v. Pub. Serv. Co. of Ind., Inc.*, 160 Ind. App. 228, 232, 311 N.E.2d 441, 443 (1974).

Where, as here, nonjoinder of a party is at issue, Indiana Trial Rule 21(A) provides in relevant part that "failure to name another person as a party or include him in the action is not grounds for dismissal." Instead, nonjoinder may be corrected by allowing the nonjoined party to intervene or by the opposing party taking affirmative steps to join the absent party. Ind. Trial Rule 21(A); *see also* Ind. Trial Rule 19 ("Joinder of person needed for just adjudication"). Indeed, "on motion of any party or of its own initiative, the court may order parties dropped or added at any state of the action and on such terms as are just and will avoid delay." Ind. Trial Rule 21(A). Snyder's procedural failure to name her mortgagee as a defendant in her complaint is not proper grounds for dismissal of her inverse condemnation claim, and the trial court erred in granting the Defendants' motion to dismiss on that basis.

15

## Conclusion

We affirm the trial court's dismissal of Snyder's trespass claim. However, we reverse the court's dismissal of her claim for inverse condemnation and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and MATHIAS, J., concur.