# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 04 2018, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Gregory W. Black
Gregory W. Black, P.C.
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Alan M. Hux
Steven C. Shockley
Vivek R. Hadley
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Alan Hall and Lisa Ann Hall, <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> West Central Conservancy District, <br> *Appellee-Defendant.* | September 4, 2018 <br><br> Court of Appeals Case No. 18A-PL-1130 <br><br> Appeal from the Hendricks Circuit Court <br><br> The Honorable Mark A. Smith, Special Judge <br><br> Trial Court Cause No. 32C01-1706-PL-69 |

**Najam, Judge.**

## Statement of the Case

David Alan Hall and Lisa Ann Hall (collectively "the Halls") appeal the trial court's order dismissing their complaint against the West Central Conservancy District ("the District") alleging breach of contract and emotional distress. The Halls present a single issue for our review, namely, whether the trial court erred when it granted the District's motion for judgment on the pleadings under Indiana Trial Rule 12(C). We affirm.

## Facts and Procedural History

The District "is a duly formed conservancy district, a special taxing district, and a political subdivision of the State of Indiana created under Indiana Code Article 14-33 to provide for collection and disposal of sewage and other liquid waste." Appellants' App. Vol. 2 at 65. In approximately 2001, the District "made sewage services available to owners of properties in the Lake Forest Subdivision [in Danville] who specifically requested services, including the Kecks," who owned a residence at 6515 Lake Forest Drive. *Id.* at 67-68. The District constructed a "connection point" on the Kecks' property located "where the . . . driveway meets Lake Forest Drive." *Id.* at 69. The District "advised the Kecks . . . of the Kecks' duty to construct and maintain lateral sewage lines to connect their home to the . . . Connection Point if the Kecks desired sewer service from [the District]." *Id.* However, the District did not inform the Kecks about a new location for the connection point after the District altered its plans for the construction of the sewer line. The connection point was moved approximately 135 feet to the west of the original location.

In early 2010, the Halls bought the Kecks' home. In April, the Halls experienced a blockage in a sewer line running to the house. Accordingly, the Halls immediately contacted the District about the problem, but the District "ignored" the Halls' "pleas for help" and "scoffed at" them. *Id.* at 61. For several years thereafter, the Halls experienced intermittent blockages of the sewer line and got no help from the District despite multiple complaints, and the Halls were otherwise unable to resolve the problem. Finally, in May 2015, two employees of the District discovered the source of the Halls' problems, and in May 2016,

> [the District] gratuitously installed two separate lateral lines from the Connection Point directly to the homes of the Halls and [their neighbors] in an effort to solve the problems caused by the single line constructed by their third-party subcontractor, which connected at the east end to lines running from the Halls' and [the neighbor's] homes to the Divide [in the driveway that split the driveway between the Halls' residence and their neighbor's residence], then ran west from the Divide to the Connection Point.

*Id.* at 72.

On June 13, 2017, the Halls filed a complaint against the District alleging breach of contract and emotional distress, and they filed an amended complaint on October 13.[1] On January 10, 2018, the District filed an answer and a motion

---

[1] The Halls filed their amended complaint in response to the District's motion to dismiss under Trial Rule 12(B)(6) and motion for a more definite statement under Trial Rule 12(E). The amended complaint also alleged breach of contract and emotional distress.

for judgment on the pleadings under Trial Rule 12(C).  In its answer and motion, the District alleged in relevant part that the Halls' complaint was barred by the applicable statute of limitations.  Following a hearing, the trial court granted the District's motion and dismissed the Halls' complaint with prejudice.  The Halls filed a motion to correct error, which the trial court denied after a hearing.  This appeal ensued.

## Discussion and Decision

Indiana Trial Rule 12(C) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Like a Trial Rule 12(B)(6) motion to dismiss, a Trial Rule 12(C) motion attacks the legal sufficiency of the pleadings.  *McCall v. State of Ind. Dep't of Nat. Res. Div. of Forestry*, 821 N.E.2d 924, 926 (Ind. Ct. App. 2005), *trans. denied*.  Our review of a trial court's ruling on a Trial Rule 12(C) motion is *de novo*, and a motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted.  *Id.*  When a complaint shows on its face that it has been filed after the running of the applicable statute of limitations, judgment on the pleadings under Trial Rule 12(C) is appropriate.  *Richards-Wilcox, Inc. v. Cummins*, 700 N.E.2d 496, 498 (Ind. Ct. App. 1998).  The question of when a cause of action accrues is generally one of law for the courts to determine.  *Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 927 (Ind. Ct. App. 2003).

The Halls concede that the six-year statute of limitations applicable to a breach of contract claim based on a contract "not in writing" applies here. *See* Ind. Code § 34-11-2-7(1) (2018). And they acknowledge that the statute of limitations began to run in April 2010. But they contend that the statute of limitations was tolled in this instance under the doctrines of fraudulent concealment and continuing wrong. In particular, the Halls assert that the trial court "must accept that [the] Halls tried to cure [the problem], were misled, were ignorant, were damaged, could not reasonably be expected to have fathomed [the District]'s breach[ or the District]'s cloak of fraud & chicanery" until May 2016 and that the District "has been in breach . . . since about March 2002, continuously[.]" Appellants' Br. at 29, 31. Thus, they allege that their complaint was not time-barred.[2] We address each contention in turn.

### *Fraudulent Concealment*

"'Fraudulent concealment is an equitable doctrine that operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant, by his own actions, *prevents the plaintiff from obtaining the knowledge necessary to pursue a claim*.'" *Snyder v. Town of Yorktown*, 20 N.E.3d 545, 551 (Ind. Ct. App. 2014) (emphasis added) (quoting *Johnson v. Hoosier Enters. III, Inc.*, 815 N.E.2d 542, 549 (Ind. Ct. App. 2004)), *trans. denied*.

---

[2] The Halls limit their argument on appeal to the doctrines of fraudulent concealment and continuing wrong. To the extent they may have attempted to assert that their complaint was timely under the discovery rule, they do not make cogent argument on that issue, and it is waived.

Pursuant to the doctrine, a defendant is estopped from asserting the statute of limitations as a defense if the defendant, by deception or violation of a duty, has concealed material facts from the plaintiff and thereby prevented discovery of a wrong. *Id.* "However, '[w]hen the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence, the statute of limitations begins to run, regardless of any fraudulent concealment perpetrated by defendant.'" *Id.* (quoting *Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct. App. 1996), *trans. denied*). Indeed, a plaintiff must exercise due diligence in commencing her action after the equitable grounds cease to operate as a valid basis for causing delay. *Id.*

[8] Here, in their complaint, the Halls allege in relevant part, and we must take as true, that:

- In approximately 2002, the District made a "clandestine change" to the location of the connection point for the sewer line. Appellants' App. Vol. 2 at 56.

- The District "neglected to correct its mistaken change until 2016." *Id.*

- The District "did not reveal the change to the Hall[s] until 2015." *Id.*

- The District "would not cooperate with [the] Kecks or Halls . . . in either understanding or making operational the collection system for which [the District] was, is, [sic] responsible." *Id.* at 57.

- "Since 2010, [the District] rebuffed [the] Halls in the effort of [the] Halls to gain [the District]'s cooperation to do its duty in making such system operational." *Id.*

[9] But the Halls do not direct us to anything in the pleadings alleging that the District did anything that *prevented* the Halls from discovering a potential cause of action against the District. *See Snyder*, 20 N.E.3d at 551. Rather, the pleadings allege merely that the District withheld information and rebuffed the Halls' requests to the District to fix the problem. And on appeal, the Halls do not explain how, other than the allegedly prohibitive costs of discovering the problem on their own, the District's alleged fraud prevented them from obtaining the knowledge necessary to pursue a claim within the limitations period.

[10] Further, in the context of the discovery rule, this court has held that

> [t]he exercise of reasonable diligence means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that *some right of his has been invaded or that some claim against another party might exist*. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full[-]blown theory of recovery developed.

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) (citation omitted, emphasis added). The same reasoning applies here, where, in order to succeed on their fraudulent concealment claim, the Halls had to show

that they exercised ordinary diligence to discover a cause of action against the District.

[11] Contrary to the Halls' assertion that they had no reason to suspect a cause of action prior to May 2015, when the District discovered the source of the problem, their complaint shows that in 2010 they were on notice that "some claim against another party might exist." *Id.* In particular, in their complaint the Halls allege that they "first encountered blockage in April [20]10" and asked the District to fix it. Appellants' App. Vol. 2 at 61. And the Halls further allege that, "[s]ince 2010," the District "rebuffed [the] Halls in [their] effort . . . to gain [the District's] cooperation to *do its duty* in making [the sewer] operational." *Id.* at 57 (emphasis added). Thus, in April 2010, the Halls had been injured and believed that the District was responsible to fix the problem. *See Snyder*, 20 N.E.3d at 551 (holding statute of limitations began to run at the latest on the date plaintiff wrote a letter to the defendants alleging she had suffered losses that could be attributed to their actions). Taking the Halls' allegations in their complaint as true, they have not shown that the fraudulent concealment doctrine operates to toll the six-year statute of limitations.

### *Continuing Wrong*

[12] "'The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury.'" *Snyder*, 20 N.E.3d at 552 (quoting *Gradus-Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012)). When the doctrine is applicable, the limitations period begins to run at the end of the continuing wrongful act. *Id.* In order for the doctrine to apply, the plaintiff must

demonstrate that the alleged injury-producing conduct was of a continuous nature. *Id.* "However, 'the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point.'" *Id.* (quoting *Fox v. Rice*, 936 N.E.2d 316, 322 (Ind. Ct. App. 2010), *trans. denied*).

[13] Here, the Halls allege in their complaint that the District's breach was "continuous," but they do not allege facts sufficient to show that the District's injury-producing conduct was of a continuous nature for purposes of the continuing wrong doctrine. While their complaint does not describe the nature of the alleged breach of contract with any specificity,[3] at the hearing on the Halls' motion to correct error, their counsel described the breach as the District's failure to "hook[] up" the "sewage system" in 2002. Tr. at 8. That the Halls continued to suffer damages allegedly stemming from that breach does not make the breach "continuous" for purposes of the doctrine. *See, e.g.*, *Meisenhelder*, 788 N.E.2d at 931-32 (holding breach occurred in 1987 and defendant's subsequent refusals to honor the parties' contract did not constitute a continuous breach); *see also Smith v. Beasley*, 504 N.E.2d 1028 (Ind. Ct. App. 1987) (holding no continuing wrong where the alleged wrong was the failure to give plaintiff a one-time increase in salary, despite the arguably continuing

---

[3] The Halls allege that the District "has performed its contract recklessly and in blatant disregard of its duties, in a negligent manner." Appellants' App. Vol. 2 at 62.

impact upon plaintiff). Further, in April 2010, the Halls "learn[ed] of facts which should [have led] to the discovery of [a] cause of action" against the District. *Snyder*, 20 N.E.3d at 552. Taking the Halls' allegations in their complaint as true, they have not shown that the continuing wrong doctrine applies here.

## *Conclusion*

[14] In response to the District's motion for judgment on the pleadings, the Halls could have presented "matters outside the pleadings" to convert the motion to a summary judgment motion. T.R. 12(C). The Halls concede that the statute of limitations began to run in April 2010 and have relied on the pleadings, which do not support their claims that the six-year statute of limitations was tolled by the doctrines of fraudulent concealment and continuing wrong. Thus, their June 2017 complaint was not timely filed.[4] We cannot say that the trial court erred when it concluded that it is clear from the face of the Halls' complaint that under no circumstances could relief be granted.[5] *McCall*, 821 N.E.2d at 926.

[15] Affirmed.

Crone, J., and Pyle, J., concur.

---

[4] In their reply brief, the Halls state in relevant part as follows: "Halls admit statute has run, no denying." Reply Br. at 9.

[5] Because we hold that the Halls' breach of contract claim is time-barred, we need not reach their contention that "Indiana law ought to permit emotional damage claims when[,] as here[,] emotional damage is the result of breach[ of contract]." Appellants' Br. at 38.