

FILED

Jul 23 2019, 7:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

F. Joseph Jaskowiak
Lauren K. Kroeger
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Patrick P. Devine
John R. Terpstra
Hinshaw & Culbertson LLP
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AOX, Inc. and Brian Piunti, <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Lake County Trust Company, Trust 4210 and Trust 5061, and Alex Emmanoilidis, <br> *Appellees-Defendants* | July 23, 2019 <br><br> Court of Appeals Case No. 18A-PL-2383 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable John M. Sedia, Judge <br><br> Trial Court Cause No. 45D01-1301-PL-5 |

**Vaidik, Chief Judge.**

## Case Summary

[1] AOX, Inc. and Brian Piunti (collectively, "AOX") appeal the trial court's grant of summary judgment in favor of Lake County Trust Company, Trust 4210 and Trust 5061, and Alex Emmanoilidis (collectively, "the Landlords") on AOX's

claims of breach of contract and malicious prosecution. We affirm as to the breach-of-contract claim but reverse as to the malicious-prosecution claim.

## Facts and Procedural History

[2]     We set forth the following facts in a previous appeal involving these parties:

> In August 1998, AOX, Inc., entered into a ten-year lease with Trust Number 4210 ("the Trust") for property in Portage, Indiana, so that AOX could open a preventative automotive maintenance center. Under the lease, the Trust was to complete construction on the property and obtain an occupancy permit by the beginning of the lease term. The lease was signed by Alex Emmanoilidis, as beneficiary of the Trust; Lake County Trust Company, as trustee of the Trust ("the Trustee"); and Brian Piunti, as president of AOX.
>
> The lease term was supposed to start in November 1998, but AOX was unable to take possession of the property because the building was not certified for occupancy until January 15, 1999. This delay resulted in the lease term beginning February 1, 1999. However, on January 8, 1999, the Trust threatened to evict AOX for failure to pay the first rental installment, even though it was not yet due. Ten days later, Emmanoilidis directed the Trustee to convey the leased property from Trust Number 4210 to Trust Number 5061, with no notice to Piunti. About two months after that, the Trust demanded payment for utility bills and for repairs made to damaged water pipes, again under the threat of eviction, even though those expenses occurred prior to AOX's occupancy.
>
> Piunti noticed numerous defects in the property and deviations from the plans and specifications as provided in the lease. He informed Emmanoilidis of these issues as early as January 28, 1999, and onward through 2008. Emmanoilidis did not correct

any of these defects and even stated at one point that he was "not going to fix shit." Instead, he subjected Piunti and AOX to several lawsuits over the years, for example:

In March 1999, Emmanoilidis and his wife alleged Piunti had stolen windows, doors, and other building materials stored on the leased property and requested over $25,000 in damages. More than ten years later, the trial court dismissed the case on Piunti's motion, noting that Emmanoilidis failed to respond to discovery requests and had not taken any action since filing the complaint.

In May 2000, Emmanoilidis directed the Trust to seek eviction, damages, and attorney's fees from Piunti and AOX for allegedly defaulting on the lease. Along with the complaint, Emmanoilidis's son Arte Emmanoilidis filed an affidavit stating that Piunti and AOX had failed to pay real estate taxes and rent. The parties later stipulated that AOX was current in rent payments. In October 2001, the trial court found that the real estate taxes the Trust demanded included taxes on land that was not part of the leased property and thus declined to evict AOX. The parties could not agree on the amount of taxes due, so the case proceeded to a bench trial. In December 2002, the court found AOX owed precisely the amount Piunti had calculated and offered to pay before trial. It thus withheld judgment to give AOX time to pay. AOX paid the same day, and the court never entered a final judgment.

In October 2004, Emmanoilidis again directed the Trust to sue Piunti and AOX. This time, the Trust accused AOX and its employees of criminal mischief for allegedly spraying soap and water on the parking lot while the asphalt was being sealed and sought damages and attorney's fees of $6000. The case went to trial in December 2007, and after no more than an hour of deliberations, the jury returned a verdict for Piunti and AOX.

In the beginning of 2008, nearing the end of the ten-year lease term, Piunti asked Emmanoilidis whether he would extend the lease to a new owner if Piunti decided to sell his business. Emmanoilidis said no. Piunti notified Emmanoilidis in February 2008 that AOX was exercising its option to extend the lease for another five years.

*Lake County Trust Co. v. AOX, Inc.*, No. 45A03-1207-PL-309, 2013 WL 3816722 *1-*2 (Ind. Ct. App. July 19, 2013) (citations and footnotes omitted).

[3] In August 2008, AOX filed suit against the Landlords in Lake County. AOX alleged that the Landlords (1) "had breached the lease and continued to do so despite AOX's repeated notices" (e.g., failure to provide access to Route 6, defective floor drains, lack of landscaping, inadequate/defective outdoor lighting, defective parking lot, and deficient painting) and (2) "abused the judicial process by maliciously filing groundless suits to harass [AOX] into terminating the lease." *Id.* at *2. The Landlords filed a counterclaim against AOX, alleging that AOX itself had breached the lease by, among other things, failing to repair a broken window on the Property.

[4] A jury trial was held in June 2012. The jury returned a verdict in favor of AOX on its breach-of-contract claim, awarding damages of $179,322, and on its malicious-prosecution claim, awarding damages of $5,950. The trial court rejected the Landlords' counterclaim about the broken window, entering a directed verdict in favor of AOX.

[5] Two months after the jury trial, on August 16, 2012, the Landlords filed a lawsuit against AOX in Porter County. The Landlords claimed that AOX had

"failed to repair broken window glass" on the property. They requested, among other things, "termination of the lease and immediate possession of the Premises[.]" Appellants' App. Vol. VI p. 80. AOX quickly moved for summary judgment, arguing in part that the Landlords' claim was barred by the doctrines of res judicata and collateral estoppel because they made a counterclaim about the broken window in the Lake County litigation and lost via directed verdict. The Porter County court agreed and granted AOX's motion based on its "review of the jury proceedings and verdict from Lake County Superior Court[.]" *Id.* at 117.

On September 12, 2012, AOX filed another lawsuit against the Landlords—the lawsuit underlying this appeal—in Lake County. AOX claimed that the Landlords' breaches of contract had continued since the judgment three months earlier:

> All the defendants have breached the lease in numerous respects, and notwithstanding the repeated and continuing notices of breach, objections and complaints by plaintiffs, and despite a trial, verdict and judgment in prior litigation between the parties conclusively establishing their breaches of lease and other matters, they have failed and refused and continue to fail and refuse to cease, cure or otherwise correct their violations of the lease.

Appellants' App. Vol. II p. 20. AOX also claimed that the Landlords' filing of the Porter County lawsuit constituted malicious prosecution, alleging that it "was legally and factually frivolous, unreasonable and groundless from its

inception, manifested bad faith both substantively and procedurally, and was filed and prosecuted without probable cause and with malice." *Id.* at 22.

[7] The Landlords moved for summary judgment on a variety of grounds. Regarding AOX's breach-of-contract claim, the Landlords argued, among other things, that the claim (1) was or could have been raised in the 2008 litigation and is therefore barred by the doctrine of res judicata and (2) is barred by the ten-year statutory limitation period for actions on written contracts. As for AOX's malicious-prosecution claim, the Landlords asserted that "under no set of facts" can AOX establish that the Landlords' Porter County lawsuit "was legally and factually frivolous, unreasonable or groundless, in bad faith or with malice, or lacked probable cause[.]" *Id.* at 182.

[8] The trial court granted summary judgment for the Landlords. The court concluded that AOX's breach-of-contract claim is barred by the doctrine of res judicata because

> all the potential damages which arose out of the conduct of [the Landlords] that gave rise to the June 11, 2012 verdict and judgment in favor of AOX, could have been litigated but were not sought in that litigation by AOX, even though they were readily ascertainable with reasonable certainty, particularly through expert testimony.

*Id.* at 18. On AOX's malicious-prosecution claim, the court concluded that the Landlords' "primary object" in filing its Porter County lawsuit "was not to harass or maliciously injure" AOX, that the Landlords were "able to (and, in fact, did) present good faith and rational arguments on the merits" of its

lawsuit, that "facts existed supporting the legal claims relied upon and presented by" the Landlords, and that "there is no evidence of [the Landlords] operating with furtive design or ill will[.]" *Id.*

AOX now appeals.

# Discussion and Decision

AOX contends that the trial court erred by granting the Landlords' motion for summary judgment. We review such motions de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is, "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

# I. Breach of Contract

AOX first challenges the trial court's grant of summary judgment to the Landlords on AOX's breach-of-contract claim. The trial court concluded that the claim is barred by the doctrine of res judicata. AOX asserts that this was error. But we do not reach the issue of res judicata, because summary judgment is appropriate on an alternative ground advanced by the Landlords: the statute of limitation.

The applicable statute is Indiana Code section 34-11-2-11, which provides that an action on a written contract, with a few exceptions not applicable here,

"must be commenced within ten (10) years after the cause of action accrues." AOX does not dispute that the breaches underlying this case are the same that were at issue in the 2008 litigation (e.g., failure to provide access to Route 6, defective floor drains, lack of landscaping, inadequate/defective outdoor lighting, defective parking lot, and deficient painting) or that these breaches existed in 1999, thirteen years before AOX filed this lawsuit. However, AOX argues that the Landlords' breaches are "continuing" and that the ten-year limitation period begins to run anew "with each new continuing breach after the jury verdict." Appellants' Br. p. 34.

[13] As an initial matter, we agree with the Landlords that the phrase "new continuing breach" is a headscratcher—that is, "if a breach is 'continuing' it cannot at the same time be 'new.'" Appellees' Br. p. 32. More importantly, the only two cases AOX cites in support of its statute-of-limitation argument do not actually support that argument. In *Block v. Ebner*, our Supreme Court held that tenants who had successfully sued their landlord for breach of a covenant to repair could later bring another suit claiming that the breach was continuing, i.e., that the landlord had not cured the breach. 54 Ind. 544, 547-49. However, the opinion does not discuss a statute of limitation or otherwise address whether the tenants' second claim was timely filed, and there is no indication that the landlord raised any such issue (as the Landlords have in this case).

[14] In the other opinion cited by AOX, *Snyder v. Town of Yorktown*, this Court explained that where "the alleged injury-producing conduct was of a continuous nature," the applicable limitations period "begins to run at the end

of the continuing wrongful act." 20 N.E.3d 545, 552 (Ind. Ct. App. 2014), *trans. denied*. This is known as the doctrine of "continuing wrong." *Id.* Here, though, the Landlords' "injury-producing conduct" was not of a "continuous nature." The Landlords were required to deliver by a certain date premises that matched certain plans and specifications, and they failed to do so. AOX knew at that point—in 1999—that it had been injured. As we said in *Snyder*, "the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *Id.* (citations omitted); *cf. Elkhart Foundry & Mach. Co. v. City of Elkhart Redev. Comm'n*, 112 N.E.3d 1123, 1132 (Ind. Ct. App. 2018) (rejecting claim of "continuing nuisance" where effects of alleged nuisance activity persisted but activity itself had ceased), *trans. denied*.

[15] To the extent AOX contends that it could not have made a claim for future damages in the 2008 litigation because it had no way of knowing what its future damages would be, if any, it had a ready alternative: a demand for specific performance. In other words, if AOX was concerned that the Landlords would refuse to cure the breaches even if it lost in the 2008 litigation, it could have asked the trial court to order the Landlords to cure the breaches. For whatever reason, AOX did not make such a request. Instead, it waited until 2012 to file a new breach-of-contract claim based on the same breaches it was aware of in 1999. That claim is plainly barred by the ten-year limitation period established

by Section 34-11-2-11, and for that reason we affirm the trial court's grant of summary judgment in favor of the Landlords on this issue.

## II. Malicious Prosecution

[16] AOX also argues that the trial court erred by granting summary judgment to the Landlords on AOX's malicious-prosecution claim. On this issue, we agree with AOX.

[17] To prevail on a claim of malicious prosecution, the plaintiff must establish that: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the action was terminated in the plaintiff's favor. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). Here, the Landlords made a counterclaim against AOX relating to a broken window in the 2008 litigation in Lake County, lost by directed verdict, and then went to Porter County and filed a new lawsuit regarding the same broken window. The Porter County court dismissed the new lawsuit "after review of the jury proceedings and verdict from Lake County Superior Court[.]" Appellants' App. Vol. VI p. 117. The Porter County action was obviously res judicata and was destined to fail.[1] Whether the Landlords acted

---

[1] A claim is barred by the doctrine of res judicata if (1) a prior judgment was issued by a court of competent jurisdiction, (2) the prior judgment was rendered on the merits, (3) the matter now in issue was, or could have been, determined in the prior action, and (4) the controversy adjudicated in the former action was between the parties to the present suit or their privies. *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1046 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*.

with malice when they filed that hopeless lawsuit is an issue that should be decided by the trier of fact, especially given the Landlords' history of filing lawsuits to harass AOX. We therefore reverse the trial court's grant of summary judgment in favor of the Landlords on AOX's malicious-prosecution claim.

Affirmed in part and reversed in part.

Mathias, J., and Crone, J., concur.